# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LI, | ) 1:07-cv-01039 AWI GSA |
|             Plaintiff, | ) ORDER REGARDING MOTION TO COMPEL DISCOVERY |
|    v. | ) (Document 18) |
| MICHAEL SHELTZER, TULARE COUNTY, Does 1-100, | ) |
|             Defendants. | ) |

## INTRODUCTION

Plaintiff James Li filed the instant motion to compel discovery responses on June 5, 2008. On June 24, 2008, the parties filed a joint statement regarding the discovery dispute. The matter was heard on June 27, 2008, before the Honorable Gary S. Austin, United States Magistrate Judge. Plaintiff James Li appeared pro se. Kathleen Taylor appeared on behalf of Defendants Michael Sheltzer and Tulare County.

## BACKGROUND

On July 20, 2007, Plaintiff filed a civil rights complaint against Tulare County and Michael Sheltzer. Plaintiff alleges that the Tulare County Public Defender's Office and Michael Sheltzer, Tulare County Chief Public Defender, ("Defendants") did not hire him because of his race and nationality and because of his protected speech in violation of the First and Fourteenth Amendments to the United States Constitution and in violation of the California Constitution.

1

On November 20, 2007, the parties participated in an initial scheduling conference. The court issued a scheduling order on that same date. During the course of the scheduling conference, the parties and the court discussed the provision of certain discovery regarding applicants for Deputy Public Defender positions. Defendants agreed to provide Plaintiff with job application documents with personally identifying information redacted.

On November 28, 2007, Defendant Michael Sheltzer filed his answer to the complaint. On February 19, 2008, Defendant Tulare County filed its answer to the complaint.

On June 5, 2008, Plaintiff filed his motion to compel discovery responses. Plaintiff seeks three main items of discovery: (1) names of job applicants for Deputy Public Defender jobs; (2) unredacted application materials from said job applicants; and (3) responses to Requests for Admissions concerning defendant Michael Sheltzer's religious association and particular political view.

On June 25, 2008, the parties filed a joint statement of discovery dispute.

## ANALYSIS

A.     Discovery Standard

Federal Rule of Civil Procedure 26(b)(1) establishes the scope of discovery and states, in relevant part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Thus, discovery is appropriate of any matter relevant to the subject matter involved in the action. "The party who resists discovery has the burden to show that discovery should not be allowed and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998); *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D. N.J. 1990).

B.   Requested Discovery

Plaintiff seeks to compel discovery of the following information:

(1) the names from a list of applicants for Deputy Public Defender positions. A list with redacted applicant names was provided to Plaintiff as part of Defendants' initial disclosures in December 2007;

(2) unredacted versions of the application materials submitted by each of the individuals on the list provided to Plaintiff; and

(3) responses to Requests for Admissions concerning Defendant Sheltzer's religious association and a particular political view.

1.   Applicant Names

In his first request for production, Plaintiff seeks the names of persons identified by number on a list he received of those persons who applied for employment as Deputy Public Defenders with the Tulare County Public Defender's Office between 2004 and 2007. The list also specified, to the extent possible, which individuals were interviewed and which were hired. The list is connected by number to redacted application materials (resumes, etc.) submitted by those persons applying for public defender positions.

Plaintiff has declined Defendants' offer to identify the number of those "on the list of applicants hired who have Asian appearing surnames, and stipulate that as far as Michael Sheltzer is aware, none of those on the list of those hired was born in China." Joint Statement, at p. 8. Plaintiff argues that providing such information is unsatisfactory "because interracial marriage and interracial adoption involving Asians are common in California." Joint Statement, at pp. 4-5. Accordingly, Plaintiff himself appears to argue that releasing the names of individuals would not provide him with information relevant to his claims. Plaintiff instead seeks the names of those hired in order to contact them, review their application materials, determine their race/ethnicity and, if necessary, depose them. In essence, Plaintiff is seeking information regarding non-parties to the litigation. Accordingly, the standards for non-party discovery require a stronger showing of relevance than for party discovery. *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986).

Defendants argue that Plaintiff's bare allegations of unlawful discrimination do not justify an invasion of the privacy of both successful and unsuccessful applicants. As indicated by Defendants, the operative complaint in this matter contains only the barest of allegations related to

3

1  discrimination. For instance, Plaintiff asserts in Count I only that "Defendants did not hire
2  plaintiff because of plaintiff's race in defiance of the 14th Amendment of the Constitution."
3  Complaint, at ¶ 10. In Count II, Plaintiff alleges that "Defendants did not hire plaintiff because of
4  plaintiff's nationality in defiance of the 14th Amendment of the U.S. Constitution." Complaint, at
5  ¶ 12. In Count III, Plaintiff alleges that "Defendants did not hire plaintiff because of plaintiff's
6  race in violation of 42 U.S.C. 1981." Complaint, at ¶ 14. In addition to discrimination, Plaintiff
7  also alleges that Defendants "did not hire plaintiff because of plaintiff's protected speech."
8  Complaint, at ¶ 18. A review of Plaintiff's complaint reveals numerous conclusory allegations.
9  There are no factual assertions of how Defendants discriminated against him based on his race or
10 his nationality or even the protected speech at issue to assist with the determination of relevancy.
11 It is true that pro se complaints generally are construed in the light most favorable to plaintiff. *See*
12 *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). However, this case does not involve a
13 typical pro se plaintiff, as Plaintiff himself informs the court that he "is a graduate of UCLA Law
14 School." Joint Statement, at p. 5.

15    Nonetheless, the court considers the various reasons for the requested discovery that are
16 proffered by Plaintiff in his moving papers and in the joint statement. According to his moving
17 papers, Plaintiff seeks the information to obtain:

18 •    "evidence of the race and ethnicity of the individuals hired after the plaintiff's
19       application." Plaintiff's Motion to Compel Discovery Responses, at p. 5.
20 •    evidence discrediting Defendants' "purported reason for not hiring" him. Plaintiff's
21       Motion to Compel Discovery Responses, at p. 6.
22 •    information to interview or to depose successful applicants to "provide relevant
23       information on whether defendants lied in the deposition and whether defendants
24       subjected the plaintiff to disparate treatment." Plaintiff's Motion to Compel Discovery
25       Responses, at p. 10.

In his joint statement, Plaintiff indicates that he seeks information "to impeach the defendants' claim in testimony at trial that the applicant who filled the opening at a particular time is an Asian American or an immigrant from China."[1]  Joint Statement, at p. 5.

Based on Plaintiff's assertions, it appears he is seeking the race and ethnicity of the individuals hired after his application and the ability to interview and/or depose them to confirm their race and ethnicity.  The race and ethnicity of successful applicants is relevant to a claim of race discrimination and may be helpful to demonstrate whether or not stated reasons for Plaintiff's rejection were instead pretexts or coverups for unlawful discrimination.  Accordingly, Plaintiff's request is GRANTED IN PART, subject to the following limitations:

a. Within ten (10) calendar days following the date of this order, Defendants shall provide the names, current business phone numbers, and race and ethnicity (if known) for those individuals who are currently working at the Tulare County Public Defenders office that were hired in the years between 2004 and 2007 to work as Deputy Public Defenders.  Plaintiff is directed not to disclose this information to any third party except in direct connection with this litigation; and

b. Within twenty (20) days following the date of this order, Defendant Sheltzer shall provide a declaration under penalty of perjury of his perception of the race and ethnicity of the remaining applicants (including those hired but no longer working at the Tulare County Public

---

[1] Plaintiff also asserts that he requires the information "to prove a prima facie case of race/ethnicity discrimination according to the analytical framework advanced by the U.S. Supreme Court in *McDonnell-Douglas v. Green*."  Joint Statement, at p. 5.  Plaintiff's reference to a prima facie case pursuant to "*McDonnell-Douglas v. Green*" is not fully instructive.  In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the United States Supreme Court stated,

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id*. at 802.  Contrary to Plaintiff's contention, this is not a Title VII action and a prima facie case of race discrimination pursuant to *McDonnell Douglas* does not expressly require information regarding the race or ethnicity of successful applicants.

Defender's Office, if any, and those interviewed, but not hired), which is keyed to each number on the list previously provided to Plaintiff.

    c. To accommodate the discovery responses in this order, the non-expert discovery deadline shall be extended to August 11, 2008.

    2.    <u>Unredacted Versions of Application Materials</u>

In his second request, Plaintiff seeks unredacted copies of application materials. Plaintiff argues that the written information in the applications is relevant because Defendant Sheltzer claimed that "his decision to not hire plaintiff was based in part on the plaintiff's alleged weakness as demonstrated in grammatical and typographical errors in the plaintiff's application." Joint Statement, at p. 10. Plaintiff also argues that applicant information regarding education and experience are relevant to show the extent to which the defendants considered the various types of experiences, backgrounds, and education in hiring decisions. *Id*. at pp. 10-11.

A sample of redacted materials was submitted with Plaintiff's motion to compel. It appears from the sample documents that Defendants redacted personally identifying information, such as name, address, social security number, home phone, e-mail address, school names, employer names and addresses, bar numbers, criminal history, and personal/professional references. Unredacted information includes relevant job experience, position titles, dates worked, duties, reasons for leaving, professional licenses and answers to job specific supplemental questions.[2]

Defendants contend that Plaintiff has not presented any argument as to why the information that has been redacted is relevant to the litigation. Defendants also assert this is an invasion of privacy of the job applicants. Plaintiff has indicated that social security numbers are not needed, but has not expressly identified the need for other personally identifiable information, such as addresses, references, criminal history, telephone numbers, etc., except to review for typographical and grammatical errors and to compare educational and employment backgrounds.

---

[2] Job Specific Supplemental Questions include "Describe any pre-legal experience you have had that will enhance your effectiveness as a criminal defense attorney," "Describe your experience, if any, in speaking in a public forum while advocating a particular position," "Describe the most complex legal document you have personally drafted." Plaintiff's List of Exhibits in Support of Motion to Compel Discovery Responses, at Exhibit B.

6

A review of the sample materials demonstrates that they contain sufficient written information for Plaintiff to assess employment backgrounds and typographical and/or grammatical errors of applicants for Deputy Public Defender positions.  As for educational background, Defendants indicated in the joint statement that they are willing to disclose the law schools attended by applicants.  Such disclosure will permit Plaintiff to compare law schools attended by successful applicants.  In addition, the remaining unredacted information provided to Plaintiff regarding education reveals when members graduated from law school and from undergraduate institutions, the degrees earned and awards, if any, sufficient for Plaintiff to compare educational experience.

Based on the foregoing, Plaintiff's request for unredacted application materials is DENIED.  However, to the extent not already provided, Defendants shall disclose to Plaintiff the identity of the law schools attended by applicants for Deputy Public Defender positions for the time period at issue within ten (10) calendar days from the date of this order.

      3.      <u>Responses to Request for Admissions</u>

In his third request, Plaintiff seeks responses to three requests for admissions from Defendant Sheltzer.  First, Plaintiff seeks a response from Defendant Sheltzer to the following request for admission:  "**Admit that you are the current president of Congregation B'nai David, located in Visalia, California**."  Plaintiff explains the relevance of Defendant Shelter's response as follows:

> In this case, the plaintiff alleges that the defendant Sheltzer's decision to not hire him was motivated by race and nationality discrimination, and defendant Sheltzer denies such allegation.  Evidence of the defendant Sheltzer's motive is directly at issue.  The plaintiff has accused defendant Sheltzer of having made the remark, "We don't hire gooks, either.", during the interview.  Because defendant Sheltzer denied having made such a remark in his deposition and claimed that he never discriminates on the basis of race or ethnicity, this raises the factual issues of whether such a remark was made at all, and if made, whether defendant Sheltzer meant it as a statement of his practice, county policy or a joke about the politics of Tulare County.  Information about his association, his view, and his position in his association sheds light on his bias which sheds light on whether the statement demonstrating prejudice toward East Asians is consistent with his bias, which in turns [sic] sheds light on whether the statement was made and the motivation behind making the statement.

Joint Statement, at pp. 14-15.

Defendants have objected to this request as an improper use of discovery to attempt to harass and intimidate defendant on the basis of his perceived religious affiliation, unwarranted

7

invasion of the defendant's privacy, and that the request falls outside the permissible scope of discovery. Joint Statement, at p. 13. Defendants argue that Plaintiff essentially is contending "that someone who is a member of a Jewish organization that expresses support for Israel is more likely to commit acts of unlawful discrimination and to be untruthful when testifying under oath." Joint Statement, p. 17.

Second, Plaintiff seeks a response from Defendant Sheltzer to the following request for admission: "**Admit that the attached is a true copy of a page of Congregation B'nai David's website available on the internet at or about March 22, 2008.**"

Plaintiff explains that whether a webpage was published by his congregation is simply a request for confirmation of information already out in public. According to Plaintiff's moving papers, the web page identifies Congregation B'nai David "as a group dedicated to the Jewish faith and encouraging readers to support the State of Israel, with a person named "Mike Sheltzer" self-identified as the president of the group in an essay posted on the website." Plaintiff's Motion to Compel, at p. 8. Plaintiff generally argues,

> if defendant Sheltzer is in fact the leader of a local religious association that supports Israel as a religious tenet, he might be deeply offended that China voted for the purported moral claim for eliminating the State of Israel and was absent from a vote to undo that claim.

Joint Statement, at p. 15.

Defendants object on the same grounds as identified in response to Request Number One.

Third, Plaintiff seeks a response from Defendant Sheltzer to the following request for admission: "**Admit that you disagree with the characterization of Zionism as racism**."

> Plaintiff argues this request is relevant, and he states:
> Whether agreeing with the statement that Zionism is racism, that is probative on whether he has a motive to be biased toward East Asians because China had voted for the UN resolution condemning Zionism as racism and Vietnam and North Korea voted against revoking that resolution...[and the] answer to this question...is highly relevant because it tends to show whether defendant has a bias to harbor some ill feeling toward Asians of certain East Asian origins, thus more likely to have made the statement, "We don't hire gooks, either.", because the word "gook" is most widely known as a derogatory term describing Chinese, Vietnamese, and Korean communists.

Joint Statement, at p. 15.

Defendants object on grounds previously noted in connection with requests one and two. Defendants also assert that Zionism is not defined and connotes both historical and political meanings. Defendants further indicate that Plaintiff has identified no fact to infer that Defendant Sheltzer's view of the nature of Zionism had any impact on his hiring decisions. Joint Statement, at pp. 18-19.

As Defendants point out, for all three requests for admissions at issue, Plaintiff's theory appears to be that someone who is Jewish and who is affiliated with an organization that promotes support for Israel would be likely to unlawfully discriminate against someone from China and would be likely to make a statement "We don't hire gooks, either," because China voted for a United Nations Resolution condemning Zionism that was passed in 1975 and was subsequently repealed more than 15 years ago. Defendant Sheltzer has denied any knowledge of the United Nations vote by China upon which Plaintiff's theory depends. Given Defendant Sheltzer's denial of Plaintiff's underlying premise, there is no indication the remaining requests are relevant. Further, there is no indication that Mr. Sheltzer's religious affiliation would reveal whether he made the alleged statement "We don't hire gooks, either" and has been untruthful in this litigation. Accordingly, Plaintiff has failed to demonstrate "good cause" to show that the request for admissions at issue are relevant to the subject matter or likely to lead to the discovery of admissible evidence. Thus, his requests for admissions are DENIED.

**ORDER**

Based on the foregoing, Plaintiff's motion to compel is GRANTED in part and DENIED in part as follows:

1. Within ten (10) calendar days following the date of this order, Defendants SHALL DISCLOSE the names, current business phone numbers, and race and ethnicity (if known) for those individuals who currently are working at the Tulare County Public Defender's Office who were hired in the years between 2004 and 2007 to work as Deputy Public Defenders. Plaintiff is directed not to disclose this information to any third party except in direct connection to this litigation.

2.  Within twenty (20) days following the date of this order, Defendant Sheltzer SHALL PROVIDE to Plaintiff a declaration, signed under penalty of perjury, of Defendant Sheltzer's perception of the race and nationality of the remaining applicants (including those hired, but no longer working at the Tulare County Public Defender's Office, if any, and those interviewed, but not hired), which is keyed to each number on the list previously provided to Plaintiff.

3.  Plaintiff's request for unredacted application materials is DENIED. However, to the extent not already provided, Defendants SHALL DISCLOSE to Plaintiff the identity of the law schools attended by applicants for Deputy Public Defender positions for the time period at issue within ten (10) calendar days from the date of this order.

4.  Plaintiff's Request for Admissions (Set One) Numbers One, Two and Three, served on Defendant Sheltzer on March 22, 2008, is DENIED.

5.  To accommodate the discovery responses outlined in this order, the non-expert discovery deadline is EXTENDED to August 11, 2008.

IT IS SO ORDERED.

Dated:   **July 7, 2008**          /s/ **Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE