IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LI,<br><br>            Plaintiff,<br>    v.<br><br>MICHAEL SHELTZER, TULARE COUNTY, and DOES 1-100,<br><br>            Defendants. | 1:07-cv-1039  AWI GSA<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. Nos. 35, 41) |

This case arises from the refusal to hire Plaintiff James Li ("Li") by Defendant Michael Sheltzer ("Sheltzer"), the Public Defender of Tulare County.  Li alleges that Sheltzer did not hire Li based on Li's race, national origin, and protected speech in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the California Constitution.  Li moves for summary judgment on each of the thirteen affirmative defenses pled by Sheltzer in his answer.  Sheltzer moves for summary judgment on all causes of action alleged against him.  For the reasons that follow, both Li's and Sheltzer's motions will be granted in part and denied in part.

**FACTUAL BACKGROUND**[1]

Li applied for employment as a deputy with the Tulare County Public Defender's Office

---

[1] There are a number of additional proposed facts regarding Sheltzer's hiring practices and the reasons for not hiring Li.  However, given the resolution of the motion, it is unnecessary to discuss these additional facts.

in 2005. DUMF No. 1.[2] Li's interview panel included Sheltzer, Lisa Bertolino, Joyce Frazier, and Ben Smuckler. DUMF No. 9; POUMF No. 3. Although Sheltzer cannot recall specific examples, during Li's interview, Li made frequent grammatical errors, paused often, and was not very dynamic in his presentation. See DUMF No. 10; Sheltzer Deposition at 11:13-14. Also during the interview, Ben Smuckler asked Li to explain what Li did between the time of graduation from college and attending law school. POUMF No. 4. Li explained that he got employment offers in the defense industry, and because of a Chinese spy incident at the time, Li's employment was placed on hold for a security clearance check. POUMF No. 5. After hearing Li's explanation, Sheltzer stated, "We don't hire gooks, either." POUMF No. 6.[3] After hearing Sheltzer's statement, Li was offended and was thinking that Sheltzer may have been making a joke about the politics of Tulare County, but Li did not laugh. Li Deposition at 71:21-24. Other than not laughing, Li looked at Sheltzer and saw no particular facial expression. See id. at 71:25-72:3. Li then looked at Smuckler and Smuckler immediately followed with a question about the nature of the work Li's performed after obtaining an engineering degree. See id. at 72:3-10. Li testified that there was a period of silence after Sheltzer made the "gook statement." See id. at 72:11-14. The period of silence was one second in duration. See id. at 72:15-16. Any indication of disapproval made by Li during the interview was not apparent to Sheltzer and Bertolino. See DUMF No. 24.

Out of concern that the "gook statement" was a botched joke, shortly after the interview, Li sent a thank-you letter to each member of the interview panel. POUMF No. 7-2. Li also sent a letter to Sheltzer on August 14, 2005, that purported to once again thank Sheltzer. See Plaintiff's Exhibit D. On August 25, 2005, Sheltzer wrote a letter to Li in which he informed Li that the position had been offered to another applicant, but that other positions were expected to be open in the Fall. See Plaintiff's Exhibit M.

---

[2] "DUMF" refers to Defendant's Undisputed Material Facts. "POUMF" refers to Plaintiff's Opposition Undisputed Material Facts.

[3] In a supplemental declaration, Sheltzer declares that he did not make this statement. However, in summary judgment stage, the non-moving party's evidence is believed. Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).

Sheltzer was unaware that Li had filed previous lawsuits alleging discrimination until after the present action was filed in July 2007. DUMF No. 22. The fact that Li had filed lawsuits alleging discrimination was not a factor in the hiring decisions made to appoint other candidates. DUMF No. 23. At all times since Li interviewed, Public Defender Michael Sheltzer determined who would be appointed as a deputy in the public defender's office. DUMF No. 2.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential

element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008); Soremekun, 509 F.3d at 984; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If the moving party meets it initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)).

   The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d

4

15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See Nissan Fire & Marine, 210 F.3d at 1103.

I.  **DEFENDANT'S MOTION**

    1.  **Race and National Origin Discrimination**[4]

*Defendant's Argument*

Sheltzer argues that in cases of racial and national origin discrimination, the courts generally apply a form of the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden shifting framework. Sheltzer expressly does not challenge whether Li can make out a *prima facie* case of discrimination, but argues instead that he had non-discriminatory reasons for not hiring Li. Specifically, Sheltzer argues that Li was not particularly compelling in his

---

[4] With respect to California law, the entirety of the argument by Defendant reads, after citing *McDonnell Douglas*, "A similar approach is used for claims under California law. (See *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 354 (2000))." Li cites to no California law cases. Since the parties essentially rely only on federal law, for purposes of this motion, the Court will treat the federal and state law analyses as identical.

5

presentation, that Li made grammatical errors, and that there were more qualified applicants.

*Plaintiffs' Opposition*

Li argues *inter alia* that, during the interview, Sheltzer stated "We don't hire gooks, either." This is direct evidence of discriminatory intent and prevents summary judgment.

*Legal Standard*

The Ninth Circuit "applies the same standards to disparate treatment claims pursuant to Title VII, the [ADEA], and [42 U.S.C.] §§ 1981 and 1983." Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1180 n.11 (9th Cir. 1998); see also Metoyer v. Chassman, 504 F.3d 919, 930 (9th Cir. 2007); English v. Colo. Dep't of Corrections, 248 F.3d 1002, 1007-08 (10th Cir. 2001) ("'While McDonnell Douglas involved a Title VII claim for failure to hire, the analytical framework it pioneered applies equally to claims brought pursuant to section 1981,' as well as to § 1983 claims based on allegations of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment"); Lelaind v. City and County of San Francisco, 576 F.Supp.2d 1079 (N.D. Cal. 2008). When a plaintiff alleging discrimination responds to a summary judgment motion, he "may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant]." Metoyer, 504 F.3d at 930; see Surrell v. Cal. Water Serv., 518 F.3d 1097, 1105 (9th Cir. 2008); Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005). Direct evidence is "evidence, which, if believed, proves the fact [of discriminatory animus] without inference or presumption" and "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." Dominguez-Curry, 424 F.3d at 1038. The direct evidence produced need not be substantial; "very little direct evidence of the employer's discriminatory intent [is needed] to

6

move past summary judgment." Chuang v. University of Cal. Davis, 225 F.3d 1115, 1128 (9th Cir. 2000). The Ninth Circuit has "repeatedly held that a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer." Dominguez-Curry, 424 F.3d at 1039 (citing Chuang, 225 F.3d at 1128; Cordova v. State Farm Ins., 124 F.3d 1145, 1149 (9th Cir. 1997)); see also Metoyer, 504 F.3d at 937-38.

*Discussion*

It is undisputed that Sheltzer was the primary decision-maker with respect to hiring decisions. DUMF No. 2. Li, who is of Chinese decent, declares that Sheltzer told him, "We don't hire gooks, either." POUMF No. 5. The term "gook" is a racial slur. See Hart v. Township of Hillside, 228 Fed. Appx. 159, 162 n.5 (3d Cir. 2007); Collier v. Ram Partners, Inc., 159 F.Supp.2d 889, 894-95 (D. Md. 2001); Cherry v. Menard, Inc., 101 F.Supp.2d 1160, 1181 (N.D. Iowa 2000). Merriam-Webster's on-line dictionary defines "gook" as meaning: "usually offensive: a nonwhite or non-American person; specifically: Asian." Sheltzer's statement (although denied by Sheltzer) is direct evidence of discriminatory intent. Since Sheltzer was the primary decision-maker with respect to hiring, and since Li was not offered a job, Sheltzer's alleged statement is sufficient to defeat summary judgment. See Dominguez-Curry, 424 F.3d at 1039; see also Metoyer, 504 F.3d at 937-38; Chuang, 225 F.3d at 1128; Godwin v. Hunt, Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998); Cordova, 124 F.3da t 1149.

**2.     Retaliation Based On Exercise of Free Speech**

*Defendant's Argument*

Sheltzer argues that, although Li's complaint does not provide a factual basis for his free speech claim, Li's interrogatory responses identify Li's prior lawsuits against the Los Angeles County public defender's office and Li's disapproving silence after Sheltzer's use of the term

gook. However, Sheltzer was not aware of Li's prior lawsuits and neither he nor the other interviewer in the room noticed any "disapproving silence." Citing *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004), Sheltzer argues that since he was unaware of the lawsuits and Li's silence, that conduct could not have had any impact on the decision not to hire. In his reply brief, Sheltzer also argues that the letter identified by Li in opposition was not identified during discovery and that Li is giving an unreasonable interpretation of the letter.

*Plaintiff's Opposition*

Li argues that Sheltzer's motion does not account for Li's August 14, 2005, letter to Sheltzer. Sheltzer's August 25, 2005, rejection letter clearly indicates that Sheltzer received and read the August 14 letter. In the August 14 letter, Li addressed improper discriminatory hiring practices by Sheltzer, which is a matter of public concern. In light of Sheltzer's statement about not hiring gooks, the August 14 letter could be viewed as an admonishment to honor the constitution and overcome racial bias. In particular: the second paragraph could be read to admonish Sheltzer on the basis of his character and not stereotypes; the third paragraph could be read as admonishing Sheltzer that, if he discriminates against Li, Li will fight back to uphold the law; the fourth paragraph could be read to admonish Sheltzer to follow the constitution and not consider race; and the fifth paragraph could be read as admonishing Sheltzer that it is in the interest of the people for employers to overcome irrational stereotyping. Further, use of the August 14 letter should come as no surprise since Li told defense counsel that he considered the August 14 letter to be protected speech on August 11, 2008. Also, since Sheltzer was present at the interview, it could be inferred that he noticed the disapproving silence. Finally, since the lawsuits were matters of public record, it could be inferred that Sheltzer knew of them.

*Plaintiff's Note of August 14, 2005*

Li's August 14, 2005, letter to Sheltzer reads:

I am writing to thank you again for the opportunity that I had on July 20, 2005 to tell you of my achievements in life and to impress you, in response to the various legal hypothetical questions, of my knowledge of the trial and jury deliberation process from my years of experience and study of the experiences of successful trial attorneys.

I appreciate the opportunity to let you know that aside from having the privilege of receiving a legal education from one of the best public law schools, I grew up in circumstances that make most public defender clients seem to have privileged lives by comparison, hopefully shedding new lights about my achievements as well as capacity to greater achievement. The demands on a deputy public defender are challenging, but probably not as challenging what I have had to face and overcome. Regardless of the sources of reference, I am confident you and your colleague can conclude I have met various manifestations of life challenges beyond expectation founded on stereotypes. As an example, which I alluded to in the interview, I have lived my life well beyond the expectations for a homeless person dropping out of high school after 9th grade.

Many may feel that the challenges of trying cases before mostly white juries are too daunting for an Asian American attorney speaking English as a second language. I am convinced that such feeling is founded on a flawed estimate of the characters of the American people and a lack of appreciation that trial lawyering and mastering a second language involve the same process of learning the rule, preparing diligently and applying the rules to the facts confidently. Today, when I enter the courtrooms of the United States, I enter as a confident attorney seeking to do justice and uphold the laws, often times against adversaries backed by seemingly limitless resources, not as a person under restraint in a prisoners' suit– the usual expectation of a 9th grade homeless high school drop-out-in fear of the moving of the wheel of justice. That is because when facing challenges with outcome within my ability to influence, I choose to face it with the bravest and the most confident front, rather than settle for fleeting moments of quietude. I am confident you agree that quality to be important for being a successful trial attorney, especially a public defender.

This year, in an intergenerational gathering of UCLAW alumni, the public defender of Los Angeles County, Mr. Michael Judge, shared with me, "The Constitution does not need to be protected. People need to be protected." I have enjoyed the experience of sharing with him my view that while protecting disadvantaged people are compellingly important, protecting the Constitution is one of the best ways to protect people needing to be protected. I am confident that you share my view that being faithful to and the willingness to share with others the need to be faithful to the Constitution and the values it embodies is also in

9

important quality for being a successful public defender.

A more fundamental reason why James Li, a former homeless 9th grade drop-out, is an attorney instead of a bum languishing somewhere inside a jail house, is that I have developed the deep believe that in this country, if a person works hard and follows the law, he can live the American dream and provide bountifully for his family.  Tragically, many young people in this country have grown up without that belief, and surrender their lives to a downward spiral of poverty, not working hard and not following the law.  I fully intend to live my life to instill in my 8-mont old daughter that belief, which constantly motivates and inspires me.  Certainly being a public defender is for me a wonderful way to live that life.  I am confident that when the opportunity arises, in due time, you will find that my performance exceeds your expectations.

I hope that you can give me the opportunity to serve you, your office and the people of Tulare County in a way that exceeds your expectation.

*Legal Standard*

In order to establish a *prima facie* case of retaliation under the First Amendment in the context of a failure to hire, a plaintiff must show: (1) he engaged in protected speech, (2) the position was eliminated as to him, and (3) his protected speech was a substantial or motivating factor in the elimination of the position as to him.  See Thomas v. City of Beaverton, 379 F.3d 802, 807-08 (9th Cir. 2004) (discussing retaliation in a termination case); Ruggles v. California Polytechnic State University, 797 F.2d 782, 786 (9th Cir. 1986) (discussing retaliation in a failure to hire case).  "The inquiry into the protected status of speech is one of law." Marable v. Nitchman, 511 F.3d 924, 930 (9th Cir. 2007); Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 924 (9th Cir. 2004).  Protected speech is speech that touches on a matter of public concern, and whether speech pertains to a matter of public concern is determined by the content, form, and context of the expressive conduct as revealed by the whole record.  Thomas, 379 F.3d at 808; Coszalter v. City of Salem, 320 F.3d 968, 973-74 (9th Cir. 2003).  "[S]peech that concerns issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government merits the highest degree of first

amendment protection." Alpha Energy, 381 F.3d at 924; Coszalter, 320 F.3d at 973. Issues such as misconduct, wastefulness, inefficiency, and discrimination by government employees are inherently matters of public concern. Alpha Energy, 381 F.3d at 926. In contrast, "speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of government agencies, is generally not of public concern." Id. at 924; Coszalter, 320 F.3d at 973; see also Thomas, 379 F.3d at 808. "In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest . . . may lead the court to conclude that the statement does not substantially involve a matter of public concern." Alpha Energy, 381 F.3d at 925 (quoting Johnson v. Multnomah County, 48 F.3d 420, 425 (9th Cir. 1995)). In order to retaliate on the basis of speech, "an employer must be aware of that speech." Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002). Finally, "[n]on-verbal conduct implicates the First Amendment when it is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." Nunez v. Davis, 169 F.3d 1222, 1226 (9th Cir. 1999).

*Discussion*

With respect to the lawsuits filed by Li against Los Angeles County , Sheltzer's uncontroverted declaration establishes that he was not aware of those lawsuits at the time he declined to offer Li a job. DUMF Nos. 22. Li provides no evidence that suggests Sheltzer knew of the lawsuits. Because Sheltzer did not know about the lawsuits, as a matter of law there is no way that the lawsuits played any role in the decision not to hire Li. Allen, 283 F.3d at 1077.

With respect to a "disapproving silence," Li's deposition indicates that Smuckler asked a question, Li answered, Sheltzer made the "gook statement" but did not ask a question, Li

11

remained silent for one second, and Smuckler asked another question. See Li Deposition at 72. There is no indication that anything else of note occurred after the "gook statement." Further, Li paused often during his interview. See DUMF No. 10. Silence can signal disapproval, disagreement, agreement, incomprehension, that an individual is thinking, or that an individual simply has nothing to say. Given Li's description of the silence, especially its extremely short duration, and that Li often paused during the interview, Li has not adequately shown that Sheltzer was aware of any disapproving silence; it therefore could play no role in the hiring decision. See DUMF No. 24; Allen, 283 F.3d at 1077. Further, Li has not adequately shown that there was a great likelihood that a particular, intended meaning from his one second of silence would have been understood. See Nunez, 169 F.3d at 1226 (non-verbal conduct must convey a particular message and have a great likelihood that the particular message will be understood).

With respect to the August 14, 2005, letter, Li's interpretation is unreasonable. The self-evident meaning of the letter is to say "thank you" and to try to make a further positive impression by providing additional information and thoughts about Li's suitability to be a public defender. The letter makes no reference to Sheltzer's "gook statement" and does not express concern that the Tulare County Public Defender's Office is engaging in racial or ethnic discrimination. The alternative meanings put forth by Li are simply not apparent, even in light of Sheltzer's "gook statement." Further, in his deposition, Li described the letter as "saying that I was available, I wanted to work at Tulare County, and I need this job." Li Deposition at 102.[5] Li

---

[5] This excerpt does not expressly identify the letter as having been written on August 14, 2005. However, it is apparent that Li referring to the August 14, 2005 letter. Li continued in his deposition that the letter was specifically to Sheltzer (as is the August 14, 2005, letter) and that Sheltzer responded to the letter by indicating that an offer to another candidate had been made, but that an opening in October was anticipated. See Li Deposition at 102-103. This is generally what the August 25, 2005, letter from Sheltzer states. See Plaintiff's Exhibit M. Further, in his opposition, Li states that Sheltzer's August 25, 2005, letter indicated that Sheltzer had read the August 14, 2005, letter. See Plaintiff's Opposition at 26:12-18.
 The relevant deposition excerpt from page 102 of Li's deposition reads:
**Q:	After your interview, what was the next time you had any contact with anybody in the Tulare County Public Defender's Office?**

did not describe his letter to Sheltzer as a statement of concern or disapproval regarding racial or ethnic discrimination by Sheltzer or the public defender's office. See id. The August 14, 2005, letter is more closely akin to Li's own "personnel disputes and grievances," which "would be of no relevance to the public's evaluation of the performance of government agencies." Alpha Energy, 381 F.3d at 924-25; Coszalter, 320 F.3d at 973. Speech concerning racial discrimination by a public entity or public employee is undoubtedly a matter of public concern and thus, protected speech; however, that was not the content or form of the August 14, 2005, letter, even considering Sheltzer's "gook statement." Because the August 14, 2005, letter is not speech on a matter of public concern, it is not protected speech for purposes of retaliation. See id.

Summary judgment on Li's fifth cause of action is appropriate.

II.   **Plaintiff's Motion for Summary Judgment**

   1.   **First, Seventh, Eighth, Ninth, Tenth, & Eleventh Affirmative Defenses**

Sheltzer has responded that he has no opposition to the granting of summary judgment on his first, seventh, eighth, ninth, tenth, and eleventh affirmative defenses. In light of this non-opposition, the Court will grant summary judgment on these affirmative defenses.

   2.   **Second Affirmative Defense – Failure to File California Tort Claim**

Li argues that there is no pre-condition filing requirement for a claim under 42 U.S.C. § 1983 and that his California Constitution claims fall completely under the Court's supplemental

---

A:   I wrote a letter to Mr. Sheltzer, and Mr. Sheltzer wrote me back.
Q:   **Whad did your letter say?**
A:   Basically saying that I was available, I wanted to work at Tulare County, and I need this job.
Q:   **And what was the response that you received?**
A:   Said that the offer had been made to others and he was considering me for future openings that he was anticipating in October.
Q:   **After receiving the letter from Mr. Sheltzer, when was the next time you had any contact with anybody in the public defenders office in Tulare County?**
A:   In December. October had gone by and then I call Mr. Sheltzer.

13

jurisdiction.

Li is correct that the Court has supplemental jurisdiction over his California law claims. However, supplemental jurisdiction does not excuse the requirement to follow the California Tort Claims Act with respect to suits against a California government entity. See <u>Williby v. City of Oakland</u>, 2008 U.S. Dist. LEXIS 19737, *17 (N.D. Cal. 2008); <u>Shah v. County of L.A.</u>, 2007 U.S. Dist. LEXIS 87295, *17 n.1 (C.D. Cal. 2007); <u>Howell v. City of Fresno</u>, 2007 U.S. Dist. LEXIS 44717 *3 (E.D. Cal. 2007); <u>Rivera v. City of Merced</u>, 2006 U.S. Dist. LEXIS 83563, *-13-*14 (E.D. Cal. 2006); <u>Himaka v. Buddhist Churches of Am.</u>, 919 F. Supp. 332, 334-35 (N.D. Cal. 1995). Summary judgment on this affirmative defense is denied.

**3.     Third & Thirteenth Affirmative Defense – Frivolousness & No Good Faith**

Li argues that he has sufficient evidence to support his claims, that his claims are not frivolous, and that he has a good faith belief in the validity of his claims. Sheltzer argues that he disputes whether he made the "gook statement," that Li must know that the statement was not made, and that his interpretation of the August 14, 2005, letter is unreasonable. This indicates frivolousness and that an award of fees may be appropriate.

These are not affirmative defenses, rather, they are requests for sanctions. As discussed above with respect to Sheltzer's summary judgment motion, there is a disputed issue of material fact regarding whether racial or ethnic bias improperly influenced Sheltzer's hiring decision. The Court will not prohibit Sheltzer from seeking any available fees or costs post-trial, but these allegations will not be presented to a jury. Summary judgment will be denied and these issues will only be dealt with, if at all, post-trial.

**4.     Fourth Affirmative Defense – Failure to Exhaust Administrative Remedies**

Li argues that no administrative remedies need be pursued for his 42 U.S.C. § 1983 claim. Sheltzer states that he does not dispute that no administrative remedies are required for Li

14

to pursue his 42 U.S.C. § 1983 claim.

In light of Sheltzer's non-opposition, the Court will grant summary judgment on this affirmative defense as applied to Li's 42 U.S.C. § 1983 claims.

**5.     Fifth Affirmative Defense – Immunity under California Government Code §§ 820.2, 822.2**

Li argues that, under the Supremacy Clause, California state law immunity provisions do not apply to federal claims under 42 U.S.C. § 1983. "Since the counts based on [the] California Constitution are substantively identical to the counts based on the federal constitution, it is a moot issue as to whether California immunity statutes apply to them." Li's Motion at 16.

Sheltzer concedes that state law immunity does not apply to Li's federal claims. Summary judgment will be granted on this affirmative defense with respect to Li's federal claims. However, Li cites no authority for the inapplicability of state law immunity to his state law claims. Summary judgment on this affirmative defense with respect to Li's state law claims is denied.

**6.     Sixth Affirmative Defense – No violation of rights and no causation**[6]

Li argues that freedom from racial/ethnic discrimination and retaliation are established federal rights and public officials are under a duty to honor those rights. Defendant is merely denying a violation. Further, there is no evidence that Li had a pre-existing condition that could insulate him from the damages of Sheltzer's conduct and there was no supervening event.

Summary judgment on this affirmative defense is unnecessary because it is not an affirmative defense. Sheltzer is simply denying that he violated Li's rights or the duties owed to Li. Sheltzer is further claiming that he is not responsible for Li's damage, i.e. he is denying

---

[6]This affirmative defense reads: "The answer party alleges that he did not breach any duty owed to Plaintiff, did not violate any public policy with respect to Plaintiff, did not violate any of Plaintiff's State and/or Federal rights, and is not responsible in any way whatsoever for any damages, if any, suffered by Plaintiff."

causation. This "affirmative defense" simply denies key elements of Li's causes of action in a general manner. Further, there are genuine issues of material fact regarding violations of Li's rights. Sheltzer's sworn denial of the "gook statement" and the non-discriminatory reasons presented by Sheltzer for not hiring Li create genuine issues. Summary judgment is denied.

### 7.  Twelfth Affirmative Defense – Failure To Mitigate

Li argues that expert testimony is needed to prove that his mitigation efforts were insufficient due to the technical and specialized knowledge that is needed to discuss the aspects of a private law practice. Since Sheltzer did not designate an expert, there is no evidence to contradict that Li's efforts at mitigation were done with good faith and in a reasonable manner.

Both Federal and California law recognize a duty to mitigate damages, and whether a plaintiff has failed to mitigate damages is generally a question of fact for the jury. See Jackson v. Shell Oil Co., 702 F.2d 197, 202 (9th Cir. 1983); Green v. Smith, 261 Cal.App.2d 392, 396-97 (1968); Ninth Circuit Model Jury Instructions - Civil: § 5.3; California Jury Instructions – Civil §§ 3960, 3961. Li has cited no authority for the proposition that evidence of mitigation must be supported by expert testimony. Amounts of expenditure and efforts to seek alternative employment are not necessarily beyond the understanding of lay jurors. Summary judgment on this issue is denied.

### CONCLUSION

Both parties move for summary judgment. With respect to Sheltzer's motion, Sheltzer's alleged statement, "We don't hire gooks, either," is sufficient evidence of racial/ethnic bias to prevent summary judgment on Li's first, second, third, fourth, sixth, and seventh causes of action. However, Li has offered insufficient evidence of retaliation based on any protected speech. Summary judgment on Li's fifth cause of action (the retaliation claim) is appropriate.

With respect to Li's motion, summary judgment will be granted with respect to Sheltzer's

first, second (as applied to the federal causes of action only), fourth (as applied to the 42 U.S.C. § 1983 causes of action) , fifth (as applied to the 42 U.S.C. § 1983 causes of action), seventh, eighth, ninth, tenth, and eleventh affirmative defenses due to Sheltzer's non-opposition. Summary judgment on Sheltzer's second and fifth affirmative defenses as applied to the state law claims, and the twelfth affirmative defenses will be denied as inadequately developed.  Summary judgment on the third, sixth, and thirteenth affirmative defenses will be denied because these are not affirmative defenses.  The third and thirteenth defense relates to sanctions and costs and will only be dealt with in post-trial proceedings.  The sixth affirmative defense is a mere denial of key elements of Li's causes of action.

      Accordingly, IT IS HEREBY ORDERED that:

1. Summary judgment on Li's first, second, third, fourth, sixth, and seventh causes of action is DENIED;

2. Summary judgment in favor of Sheltzer on Li's fifth cause of action is GRANTED;

3. Summary judgment in favor of Li on Sheltzer's first, seventh, eighth, ninth, tenth, and eleventh affirmative defenses is GRANTED;

4. Summary judgment on Sheltzer's third, sixth, twelfth, and thirteenth affirmative defenses is DENIED; and

5. Summary judgment on Sheltzer's second, fourth, and fifth affirmative defenses, as applied to Li's federal claims only, is GRANTED.

IT IS SO ORDERED.

**Dated:**   **December 11, 2008**              **/s/ Anthony W. Ishii**
                                                    CHIEF UNITED STATES DISTRICT JUDGE